UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RHONDA BATTLE,

       Plaintiff,

v.                                    Case No. 2:20-cv-96-NPM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## OPINION AND ORDER

Rhonda M. Battle seeks judicial review of a denial of her application for supplemental security income. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 22). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the ALJ's Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[1] Cited as "Tr." followed by the appropriate page number.

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[2] The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[3]

### B.      Procedural history and factual background

Battle was born in February 1970, has an eleventh-grade education, and has no work that qualifies as past relevant work. (Tr. 20, 33). On August 20, 2015, Battle applied for supplemental security income, claiming she was unable to work due to disabling conditions beginning February 5, 2014. (Tr. 233, 369-377). Battle's application was administratively denied initially on September 30, 2015, and upon reconsideration on December 10, 2015. (Tr. 233, 246).

At Battle's request, administrative Law Judge Eric Anscheutz ("ALJ") held a hearing on March 1, 2017. (Tr. 74-118). On August 16, 2017, the ALJ issued a decision finding Battle not under a disability since August 20, 2015, the application date. (Tr. 251-267). On October 9, 2017, Battle requested review by the Appeals Council. (Tr.. 321). The Appeals Council granted review and issued an Order of Remand on June 4, 2018. (Tr. 272-275). The remand directed the ALJ to re-evaluate Battle's alleged symptoms and reconsider her "maximum" RFC. (Tr. 273).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

Upon remand, the ALJ held a second hearing on December 13, 2018. (Tr. 28-58). He issued a decision on April 17, 2019, finding Battle not disabled since the date of the application. (Tr. 15-21).

On December 17, 2019, the Appeals Council denied Battle's request for review. (Tr. 1-5). Battle then filed a Complaint (Doc. 1) on February 11, 2020, with this Court and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

## C.    The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1)). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400. Unlike judicial proceedings, SSA hearings "are

inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280

(11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found at step one of the evaluation, Battle had not engaged in substantial gainful activity since August 20, 2015, the application date. At step two, the ALJ characterized Battle's severe impairments as: "cardiomegaly, morbid obesity, asthma, degenerative disc disease, a depressive disorder, cocaine addiction in remission, deep vein thrombosis (DVT), COPD, sleep apnea, and HIV positive status." (Tr. 12.). At step three, the ALJ determined Battle did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 13-14).

As a predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 [C.F.R. §] 416.967(b) such that the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. Claimant can stand/walk for 4 hours in an 8 hour workday. Claimant can sit for 6 hours in an 8 hour workday. Claimant can never climb ladders, ropes, or scaffolds. Claimant can only occasionally climb ramps and stairs. Claimant can only frequently balance, stoop, and kneel but only occasionally crouch or crawl. Claimant should avoid workplace hazards such as unprotected heights and unshielded rotating machinery. She should avoid concentrated exposure to dusts, odors, fumes, and gases. She is limited to performing simple, routine, repetitive tasks but not on a production quota basis. She can have frequent interaction with supervisors, coworkers, and the public.

(Tr. 14). The ALJ also found Battle had no past relevant work. (Tr. 20).

Finally, at step five, the ALJ found Battle could perform other jobs that existed in significant numbers in the national economy. (Tr. 20). In support, the vocational expert identified three representative occupations an individual with Battle's age (45 years old as of the application date), education (limited education), no past relevant work experience, and RFC could perform:

(1) cashier, DOT 211.462-101, light, SVP 2;

(2) routing clerk, DOT 222-687.022, light, SVP 2; and,

(3) silver wrapper, DOT 318.687-018, light, SVP 1.

(Tr. 20-21).[4] Relying on the vocational expert's testimony, the ALJ concluded Battle has not been under a disability from the date of the application. (Tr. 21).

## II.    Analysis

Battle's appeal presents the following issues:

(1)    Whether the ALJ erred at step three when determining Battle did not meet Medical Listing 3.02(A).

(2)    Whether the ALJ considered the combined impact of all of Battle's severe impairments on her residual functional capacity.

(3)    Whether the ALJ properly evaluated Battle's subjective statements.

---

[4] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

(4)    Whether the ALJ erred by failing to consider the impact of absenteeism on the ability to remain employed.

(Doc. 22, pp. 25-63).

## A.    Standard of review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358

(11th Cir. 1991)).

## B.     Whether the ALJ erred by not finding Battle met Listing 3.02(A)

Battle contends the ALJ failed to evaluate her pulmonary impairments at step three, which resulted in an unsupported finding that her impairments did not meet or medically equal the criteria of Listing 3.02(A). (Doc. 22, p. 25). Specifically, Battle claims she met Listing 3.02(A)'s two requirements: (1) a chronic respiratory disorder due to any cause except for cystic fibrosis; and (2) a Forced Expiratory Volume $(FEV_1)^5$ of less than or equal to 1.35. (*Id.*, pp. 25-26).

Battle has the burden of proving that an impairment meets or medically equals a listed impairment. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008). To demonstrate whether an impairment meets a listing, a plaintiff must show it meets *all* the specified medical criteria. *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 840 (11th Cir. 2019) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). If an impairment meets only some of the criteria, it will not qualify, no matter the severity of the impairment. *Id.* To meet a listing, a claimant must have

---

[5] "Spirometry, which measures how well you move air into and out of your lungs, involves at least three forced expiratory maneuvers during the same test session. A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The volume of air you exhale in the first second of the forced expiratory maneuver is the FEV1. The total volume of air that you exhale during the entire forced expiratory maneuver is the FVC. We use your highest FEV1 value to evaluate your respiratory disorder under 3.02A, 3.03A, and 3.04A, and your highest FVC value to evaluate your respiratory disorder under 3.02B, regardless of whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(E)(1).

a diagnosis included in a listing and provide medical reports documenting that the conditions meet the specific criteria of a listing and the duration requirement. *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)).

Listing 3.02(A) addresses chronic respiratory disorders due to any cause except cystic fibrosis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02. Relevant here, to meet the criteria for Listing 3.02(A), a person of Battle's height (sixty-five inches (Tr. 1375)), sex (female), and age (twenty years or older) must demonstrate a $FEV_1$ of less than or equal to 1.35. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.01A, Table I-B.

In the decision, the ALJ found Battle had the severe impairments of both asthma and COPD. (Tr. 12). At step three, the ALJ found Battle did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 13). The ALJ explained: "I considered all adult listings. The severity of the claimant's impairment does not rise to the level required to meet or equal a listed impairment." (Tr. 13).[6]

Battle argues that by not specifically analyzing Listing 3.02(A)'s criteria, the ALJ erred at step three. Even when an ALJ does not explicitly state that a claimant's impairments did not meet or equal a listing, such determination may be implicit in the ALJ's decision. *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 841 (11th

---

[6] While not relevant here, the ALJ proceeds to discuss Listing 12.04 and its criteria. (Tr. 13).

Cir. 2019) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). "While the Listings in 'Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination.'" *Id.* (quoting *Hutchison*, 787 F.2d at 1463).

Here, the ALJ listed both asthma and COPD as severe impairments, which relate to Listing 3.02(A). The ALJ then proceeded to steps four and five of the sequential analysis. Thus, the ALJ's finding that Battle's impairments did not meet a listed impairment includes implicit findings that Battle's asthma and COPD did not meet Listing 3.02(A). Under Eleventh Circuit precedent, "the ALJ was not required to make more explicit findings as to" Listing 3.02(A). *Id.* at 842.

Furthermore, substantial evidence supports the ALJ's implicit finding that Battle's respiratory disorders did not meet Listing 3.02(A). There is no dispute Battle meets the first criteria that she suffers from respiratory disorders. The record is replete with evidence establishing Battle suffers from chronic respiratory disorders. Indeed, as stated above and bears repeating, the ALJ categorized Battle as having, among other things, the severe impairments of both asthma and COPD. (Tr. 12). There is also no dispute that on June 7, 2016, Battle underwent a Pulmonary Function Analysis, which resulted in an $FEV_1$ of less than 1.35, which on its face meets the second criteria for Listing 3.02(A). (Tr. 1375).

Even so, as the Commissioner identifies, there are more requirements to meet Listing 3.02(A). Specifically, the Commissioner argues the $FEV_1$ test did not satisfy the criteria for the Listing because Battle did not meet introductory language requirements for Listing 3.02(A). (Doc. 22, pp. 30-31). Under the introductory language for respiratory disorders—which includes Listing 3.02(A)—to meet a respiratory-disorders listing:

> 2. We have the following requirements for spirometry under these listings:
>
> a. You must be medically stable at the time of the test. Examples of when we would not consider you to be medically stable include when you are:
>
> (i) Within 2 weeks of a change in your prescribed respiratory medication.
>
> (ii) Experiencing, or within 30 days of completion of treatment for, a lower respiratory tract infection.
>
> (iii) Experiencing, or within 30 days of completion of treatment for, an acute exacerbation (temporary worsening) of a chronic respiratory disorder. Wheezing by itself does not indicate that you are not medically stable.
>
> (iv) Hospitalized, or within 30 days of a hospital discharge, for an acute myocardial infarction (heart attack).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(E)(2)(a).

The medical records establish the Pulmonary Function Analysis containing an $FEV_1$ of less than 1.35 was conducted on June 7, 2016. (Tr. 1375). The records also show on May 26, 2016—twelve days earlier—Battle went to Lee Memorial's

emergency room complaining of a constant cough. (Tr. 1361-1368). Battle received a differential diagnosis of bronchospasm and asthma exacerbation. (Tr. 1366). Battle was prescribed an albuterol inhaler, prednisone, and azithromycin at this visit. (Tr. 1362). From these records, Battle has not met her burden of showing she was medically stable on June 7, 2016, the date of the pulmonary function test. (Tr. 1375). Respectively, Battle was prescribed respiratory medication within two weeks prior to the pulmonary test, and she experienced an acute exacerbation or temporary worsening of a chronic respiratory disorder within thirty days prior to the pulmonary function test. Accordingly, substantial evidence supports the ALJ's finding or implicit finding that Battle had not carried her burden at step three to show that her respiratory disorders met or equaled Listing 3.02(A).

### C.    Whether the ALJ considered the impact of all of Battle's severe impairments on her RFC

In comparing the ALJ's August 16, 2017 decision with the more recent April 17, 2019 decision, Battle argues it is evident that the ALJ did not consider the impact of all of her severe impairments in assessing the RFC. (Doc. 22, p. 39). In the 2017 decision, the ALJ categorized Battle's severe impairments as: "cardiomegaly; morbid obesity; asthma; degenerative disc disease; depressive disorder; and cocaine addiction disorder in remission" and found Battle capable of performing sedentary work. (Tr. 254, 255). Yet in the 2019 decision, the ALJ included the additional

severe impairments of DVT, COPD, sleep apnea, and HIV positive status,[7] and then found Battle capable of performing less than the full range of light work. (Tr. 14). Battle claims that despite this inconsistency, the ALJ offers no explanation as to why in the 2017 decision with fewer severe impairments, the ALJ found Battle capable of only sedentary work; but in the 2019 decision with additional severe impairments, the ALJ found Battle capable of a limited range of light work. (Doc. 22, p. 40). Without explanation, Battle argues, it is unclear whether substantial evidence supports the ALJ's more recent finding. (*Id.*).

On June 4, 2018, the Appeals Council granted Battle's request for review, vacated the 2017 hearing decision, and remanded the case to an administrative law judge for further proceedings. (Tr. 273-274). On remand, the Appeals Council required the administrative law judge to:

- Evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 [C.F.R. §] 416.929 and Social Security Ruling 16-3p).

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 [C.F.R.§] 416.945 as well as Social Security Rulings 85-16 and 96-8p).

---

[7] Of note, in the 2019 decision, the ALJ found throughout the relevant time period, Battle's DVT and HIV remain asymptomatic with medication and a treatment regimen. (Tr. 19). Further, the ALJ found Battle's sleep apnea condition under control by Battle's use of a CPAP machine. (Tr. 18).

(Tr. 273).

The Court finds no error in the ALJ's lack of explanation or reconciliation of the different findings in the two decisions. When the Appeals Council remands an action to an administrative law judge, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). And under the Regulations, "[v]acate means to set aside a previous action." 20 C.F.R. § 416.1401. Furthermore, a vacated decision is "'officially gone'" and the vacated decision has no legal effect whatever. *Zuniga v. Comm'r of Soc. Sec.*, 772 F. App'x 870, 871 (11th Cir. 2019) (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002)). "Because the Appeals Council vacated the ALJ's earlier opinion, that opinion was stripped of its binding effect. Accordingly, the ALJ was not required to abide by his prior RFC finding on remand." *Id.* Battle does not cite to, and the Court finds, no legal authority that requires the ALJ to explain why he did not abide by the findings in a vacated prior decision. As a result, the Court finds no error.

Even if the ALJ had some duty to explain the allegedly conflicting RFC assessments—which he did not—Battle's argument still fails. It is apparent on the face of the 2019 decision that the ALJ did consider all of impairments singly and in combination when determining Battle did not meet a listing. (Tr. 13). When

assessing the RFC, the ALJ explicitly states: "[i]n making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and he also considered the opinion evidence. (Tr. 14). Further, the ALJ included an exhaustive discussion of Battle's multiple impairments and their functional limitations as well as a comprehensive summary of her medical history, including hospital visits, office visits, and objective medical evidence. (Tr. 14-19). The ALJ satisfied the duty to consider the impairments in combination to determine if the combined impairments render Battle disabled. *See Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797 (11th Cir. 2017) (finding no merits in plaintiff's claim that the ALJ failed to evaluate the plaintiff's impairments in combination when the ALJ explicitly stated he considered all impairments in combination, considered all symptoms and the extent those symptoms could be accepted as consistent with all other evidence, and included an exhaustive discussion of the combined effect of plaintiff's various impairments and their functional limitations).

Finally, in a footnote Battle argues the ALJ inadequately considered her severe obesity. (Doc. 22, p. 41 n.37). Battle claims that while the ALJ found her obesity a severe impairment, he only considered the impact of this impairment on her spine when assessing the RFC and should have considered its impact on all of her limitations. (*Id.*). While an ALJ has the responsibility to consider obesity as a

medically determinable impairment, the burden is on Battle to establish that her obesity results in functional limitations and that she is disabled under the Social Security Act. *See* 20 C.F.R. § 416.912(a). When the record reflects that the ALJ found obesity a severe impairment, considered a claimant's obesity, and then made specific reference to SSR 02-1p, a claimant's argument that the ALJ failed to consider obesity is not supported by the record. *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009).

In the decision, the ALJ considered Battle's obesity. The ALJ noted Battle's medical records show she was obese and had a BMI[8] of approximately 41 in 2015. (Tr. 15). In medical records from 2016, the ALJ reported Battle had a BMI of approximately 43. (Tr. 16). The ALJ found:

> The record also shows that the claimant has a body mass index (BMI) of 41-43 which is considered morbidly obese (SSR 02-0lp). There is no compelling medical evidence in the record that directly attributes the claimant's obesity to a specific medically determinable condition and there is no apparent clinical evidence in the record that attributes her obesity as affecting a weight-bearing joint. Specifically, repeated examination showed claimant to walk with a normal gait. Repeated examination also showed claimant to typically have none or only mild respiratory difficulty. Diagnostic imaging of the spine was unremarkable and imaging of the chest and heart showed none or only mild abnormalities. In light of the above evidence and pursuant to SSR 02-0lp, it is my conclusion that the claimant's obesity does not present an adverse impact on

---

[8] Body Mass Index ("BMI") is "the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). For adults, both men and women, the Clinical Guidelines describe a BMI of 25–29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" SSR 02–1p, 2002 WL 34686281, *2 (Sept. 12, 2002).

> her other medically determinable impairments and, specifically, on her residual functional capacity to work.

(Tr. 19). Here, the Court finds the ALJ considered Battle' obesity in accordance with SSR 02-1p when making a disability determination. The ALJ then found Battle's morbid obesity a severe impairment and cited to medical records containing references to her obesity. (Tr. 12, 15, 16). The ALJ also considered Battle's obesity in combination with her other health problems, ultimately concluding that obesity did not present an adverse impact on her other medically determinable impairments or on her RFC to work. (Tr. 19). The Court finds no error. *See Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (finding the ALJ complied with SSR 02-1p where the ALJ considered the medical evidence and considered obesity in context with the plaintiff's other health problems).

### D.    Whether the ALJ properly evaluated Battle's subjective symptoms

Battle asserts that the ALJ offered only a vague and conclusory statement to discount her subjective statements and thereby failed to properly evaluate them. Battle claims the ALJ ignored the vast majority of the medical evidence, such as numerous emergency room visits and hospitalizations relating to her impairments. Specifically, Battle claims the ALJ improperly relied on imaging of her chest and characterized it as "generally unremarkable," cited the performance of "mundane daily activities" to suggest Battle was not as limited as alleged, and improperly

discounted her subjective statements based on her cigarette smoking. (Doc. 22, pp. 52-57).

To show disability based on pain or other symptoms, a claimant must: "show an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain [or other symptoms] arising from that condition or (2) that the medical condition is severe enough that it can reasonably be expected to give rise to the alleged pain [or other symptoms]." *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020) (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).[9] After a claimant has established a qualifying medical condition, then the ALJ must consider all the evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding whether the claimant is disabled. *Id.* If the ALJ does not credit the claimant's subjective testimony, he must articulate "'explicit and adequate reasons'" for his decision. *Id.* (quoting *Holt*, 921 F.3d at 1223). Here, the ALJ specifically referenced SSR 16-3p. (Tr. 11, 14); *see* SSR 16-3p, 2016 WL 1119029 (March 16, 2016)).

While Battle characterizes the ALJ's consideration of her subjective statements as vague and conclusory and claims the ALJ did not consider all the

---

[9] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p explains that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* The Commissioner republished SSR 16-3p in October 2017. 82 Fed. Reg., 49,462 (Oct. 25, 2017).

evidence, the Court disagrees. The ALJ considered all of the medical evidence, including the many hospital and emergency room visits. (Tr. 14-18). After consideration of the evidence, the ALJ found Battle's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Battle's statements concerning the intensity, persistence, and limiting effects of these symptoms was not entirely consistent with the medical evidence and other evidence of record. (Tr. 18).

The ALJ did not stop there. He then proceeded to discuss Battle's pulmonary conditions in detail and explained why the medical records did not support the degree of limitation Battle claimed. (Tr. 18). The ALJ referred to the objective medical evidence of chest x-rays that were generally unremarkable for ongoing pulmonary disease and imaging showing only mild cardiomegaly. (Tr. 18). The ALJ also cited many reports when Battle denied fatigue, chest pains, dizziness, headaches or palpitations except for isolated instances that were quickly resolved with treatment. (Tr. 18). The ALJ then specifically detailed reports showing normal examinations or mild exacerbations that were resolved with treatment. (Tr. 18). Finally, the ALJ found Battle's sleep apnea controlled with the use of a CPAP machine. (Tr. 18). In this matter, the ALJ was neither vague nor conclusory and supported his findings about the intensity, persistence and the limiting effects of Battle's symptoms with discussion of the medical evidence.

When referring to x-rays, Battle claims the ALJ improperly substituted his opinion for that of a medical authority. (Doc. 22, p. 54). The ALJ did not. According to the medical records, the x-rays show: no osseous injury (Tr. 1278); and lumbar spine has "no acute abnormality noted" (Tr 1661, 1733). The ALJ properly evaluated the x-ray results and relied on these reports to find the x-rays unremarkable. Thus, Battle has not met her burden of showing that the x-rays support any other conclusion.

Battle next claims the ALJ improperly referred to her mundane daily activities to suggest she is not as limited as alleged. (Doc. 22, p. 55). An ALJ may consider a claimant's daily activities when evaluating her subjective statements. *Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019). At the December 2018 hearing, Battle testified that she tries to do as much as she can, including cleaning her house, making simple meals, exercising her legs, watching television, and walking. (Tr. 36-37). On good days she washes clothes, cleans the bathroom, and sweeps, but on bad days, her children help her. (Tr. 37-38). Battle takes issue with the ALJ's characterization that she is able to perform household chores—such as cleaning the house, doing laundry and cooking—claiming her daughters do these tasks for her, especially on bad days which occur three to four times per week. (Doc. 22, pp. 55-56).

Based on Battle's testimony at the December 13, 2018 hearing, the ALJ found she was able to watch television, walk, use her cell phone, engage in social media, attend church twice a month, use public transportation, prepare meals, and perform *some* household chores, including washing clothes and cleaning. (Tr. 14, 18, 19). While finding Battle able to do *some* household chores (Tr. 18), the ALJ focused on her ability to regularly attend church, visit with friends and family, use public transportation, run errands, play games, read, watch television, manage finances, and engage with others on social media. (Tr. 19). Importantly, the ALJ did not conclude Battle was not disabled or able to work based on her daily activities, contrary to Battle's argument. Instead, the ALJ found that being able to perform these daily activities, "tend[s] to suggest that the claimant is not as limited as is alleged." (Tr. 19). The Court finds no error in the ALJ's consideration of Battle's daily activities.

Finally, Battle argues the ALJ improperly discounted her subjective complaints based on her continued smoking. (Doc. 22, p. 56). The ALJ noted Battle continues to smoke a half pack of cigarettes daily which further indicates her pulmonary and respiratory systems are not as compromised as she claims. (Tr. 16-17, 18). Battle argues the ALJ impermissibly considered her smoking to discount her subjective complaints, citing *Shramek v. Apfel*, 226 F.3d 809, 812 (7th Cir. 2000). (Doc. 22, p. 56). But in *Shramek*, the Seventh Circuit found the ALJ impermissibly found the claimant non-compliant with prescribed medical treatment

by continuing to smoke against doctor's recommendations. *Id.* at 812-13. The ALJ's statement in this matter is more akin to *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015), where the Eleventh Circuit found the ALJ adequately explained finding the claimant's subjective complaints not fully credible. There the ALJ supported his determination by noting the claimant continued to smoke despite repeated warnings that doing so would impede healing and exacerbate the claimant's symptoms. *Id.* In this case, the ALJ mentioned Battle continued to smoke cigarettes and found it further indicated that her impairments were not as compromised as she claims.[10]  The Court finds no error.

Overall, the ALJ articulated specific and adequate reasons for finding Battle's subjective statements not entirely consistent with the medical evidence and the other evidence of record, and the Court finds these reasons are supported by substantial evidence.

### E.    Whether the ALJ considered the impact of absenteeism on the ability to remain employed

Battle argues the ALJ erred by failing to consider the impact of Battle's numerous emergency room visits and in-patient hospitalizations on her ability to work. (Doc. 22, p. 33). Battle acknowledges that absenteeism from work is not a medically determinable impairment, a functional limitation, or a restriction

---

[10] The medical records show Battle was repeatedly counseled to discontinue smoking. (*See e.g.*, Tr. 153, 606, 862, 899, 926, 948, 1017, 1747).

therefrom; but nevertheless argues that when assessing an RFC, the ALJ must consider the effects of Battle's treatment in conjunction with other evidence of record. (Doc. 22, p. 34). Battle asserts that between August and December 2015, she was in the emergency room or hospitalized for 13 days (Tr. 835, 1273, 1281, 1286, 1295, 1315, 1320, 1326, 1331); during 2016, she spent 37 days in the emergency room or in-patient at the hospital (Tr. 1340, 1351, 1356, 1360-1361, 1386, 1392, 1401, 1409, 1414, 1428, 1435, 1443, 1451, 1458, 1465, 1467-1468); during 2017, in addition to outpatient or primary care appointments, Battle underwent Coumadin/IV therapy 25 times (Tr. 1492-1494), and was seen in the emergency room 3 times (Tr. 1480, 1496, 1570-1572, 1583); and in 2018, Battle was at the hospital at least 14 days (Tr. 1640, 1655-1656, 1663, 1672, 1688, 1696-1697, 1701, 1727, 1811, 1856, 1871). (Doc. 22, p. 35).

When determining an RFC, an ALJ must consider all relevant evidence of record, including the effects of treatment, such as the frequency of treatment, duration, and disruption to routine. SSR 96-8P, 1996 WL 374184, *5 (July 2, 1996). Nonetheless, "whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p).

Thus, the number of medical appointments a plaintiff attends is not a functional limitation caused by her impairments that would affect her physical or mental capabilities. *Id.*

Battle cites *Deandrea v. Berryhill*, No. 8:17-CV-2195-T-AEP, 2019 WL 1376520, *3 (M.D. Fla. Mar. 27, 2019), for the proposition that an ALJ must consider the effects of a claimant's treatment in conjunction with other evidence of record and if not, the matter must be remanded. (Doc. 22, p. 34). In this case, the ALJ thoroughly summarized Battle's medical treatment from August 2015 through November 2018, noting the various emergency room visits, doctor visits, and hospitalizations. (Tr. 14-18). And unlike *Deandrea*, in this case the ALJ considered Battle's claim of absenteeism as shown by posing a hypothetical question to the vocational expert that included missing work two or more days per month due to a combination of physical impairments. (Tr. 113-114). After consideration, the ALJ found Battle's statements as to intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence of record. (Tr. 18). And while the ALJ did not credit Battle's claim for missing work at this rate, the ALJ did consider it and decided not to include any absenteeism from work in the RFC. The Court affirms the ALJ's determination that Battle had the RFC to perform less than the full range of light work.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 31, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE